IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Denise Renee Sito,                                          Case No. 3:17CV1979

        Plaintiff

        v.                                          **ORDER**

Commissioner of Social Security,

        Defendant

       This is a Social Security case in which the plaintiff, Denise Sito, appeals the Commissioner's decision denying her application for benefits.

       An administrative law judge rejected Sito's claim that she suffered from a number of severe impairments, including fibromyalgia. (Doc. 12 at 662–63). The ALJ then ruled that Sito had the residual functional capacity (RFC) to perform a full range of work at all exertional levels, provided that the work require Sito to execute only "simple instructions." (*Id.* at 666). Because Sito could, with this RFC, perform her past relevant work as a parts assembler, the ALJ concluded that Sito was not disabled. (*Id.* at 669–71).

       Pending is Magistrate Judge Greenberg's Report and Recommendation, which recommends that I affirm the denial of benefits. (Doc. 18). Sito has filed an objection. (Doc. 19).

       On de novo review of the R&R, *see* 28 U.S.C. § 636(b)(1), I overrule the objection, adopt the R&R, and affirm the Commissioner's decision.

**Discussion**

**A. Compliance with the Remand Order**

Sito argues that the ALJ did not comply with the remand order that Magistrate Judge Baughmann issued in early 2017, when he vacated the ALJ's first decision denying Sito benefits. *Sito v. Comm'r of Soc. Sec.*, 229 F. Supp. 3d 633 (N.D. Ohio 2017).

In that decision, the ALJ, contrary to Sixth Circuit case law, gave little weight to the opinions of Robert Kanney, Sito's treating physician, because Kanney rendered his opinions after Sito's date last insured (DLI). *Id.* at 645. Magistrate Judge Baughmann therefore ordered the ALJ to "properly weigh[ ] and fully analyze[ ]" Dr. Kanney's opinions "in accordance with the treating physician rubric." *Id.* at 647.

On remand, the ALJ again gave Dr. Kanney's opinion little weight, this time after concluding that his opinion "departs substantially from the rest of the evidence of record." (Doc. 12 at 668).

As Magistrate Judge Greenberg correctly found, the ALJ complied with the remand order by "re-visit[ing] the opinion evidence from Dr. Kanney" and "providing additional reasoning as to why she rejected his opinions." (Doc. 18 at 33). The remand order simply precluded the ALJ from discrediting Dr. Kanney because he issued his opinion after Sito's DLI, and this time the ALJ did not rely on that prohibited ground.

I therefore overrule Sito's first objection.

**B. Treating-Source Rule**

Sito next claims that the ALJ failed to give good reasons for according only little weight to Dr. Kanney's opinion that Sito had severe functional limitations. (Doc. 19 at 3). According to Sito, the ALJ "completely fails to discuss" how the evidence was, in fact, "inconsistent with the

2

limitations opined by Dr. Kanney[.]" (*Id.* at 4). Sito also argues that the ALJ "blind[ly] refus[ed]" to consider how the post-DLI medical evidence "impacted her impairments prior to her DLI[.]" (*Id.*).

This objection lacks merit.

"Treating-source opinions must be given controlling weight if two conditions are met: (1) the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques; and (2) the opinion is not inconsistent with the other substantial evidence in the case record." *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013).

The Commissioner must provide "good reasons for discounting the weight given to a treating-source opinion," and these reasons "must be supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Id.*

Here, the ALJ acknowledged that Dr. Kanney was a treating source, but declined to give his opinion controlling weight because it was inconsistent with the record as a whole. (Doc. 12 at 667–68). As the Magistrate Judge found (Doc. 18 at 37–41), and as the ALJ's decision itself establishes, there was substantial evidence for that conclusion.

### 1. ALJ's Decision

At the beginning of her decision, the ALJ determined that "the record [was] devoid of evidence" establishing that Sito had "foot problems; back/neck problems; fibromyalgia; and diverticulitis." (Doc. 12 at 662).

Regarding the foot problems, the ALJ noted that while Sito's foot had been "'run over by a car'" in June, 2008, a subsequent X-ray "showed no evidence of fracture or dislocation." (*Id.* at 667). As for Sito's back pain, the only evidence in the record was an MRI from March, 2012 –

3

six months after Sito's DLI of September, 2011 – showing some disk degeneration. (*Id.* at 662–63). With respect to diverticulitis, the ALJ found that a colonoscopy and an ultrasound of Sito's pelvis, both in late 2011, were "normal." (*Id.* at 663). Finally, the ALJ concluded that Sito's evidence was insufficient to establish fibromyalgia.

In light of all this, the ALJ found "no indication" that any of Sito's alleged medical impairments "caused more than a minimal limitation from March 1, 2007 through her [DLI] of September 30, 2011." (*Id.*).

The ALJ then recounted the marked limitations that Dr. Kanney expressed in the physical-impairment questionnaires he completed in January and December, 2012. (*Id.* at 667). Her limitations were so severe, Kanney opined, that Sito was not "physically capable of working an eight-hour day, five days a week, on a sustained basis." (*Id.*).

According to the ALJ, these limitations were "without substantial support from the other evidence of record, which obviously renders them less persuasive." She also discounted the opinion because of the "significant gaps in [Sito's] history of treatment" with Dr. Kanney. (*Id.*). Finally, the ALJ emphasized that "most of the medical records" were "dated prior to [Sito's] alleged onset date, or after her [DLI]." (*Id.*).

## 2. The ALJ Properly Applied the Treating-Source Rule

Contrary to Sito's claim, the ALJ did explain how Dr. Kanney's opinion was inconsistent with the medical evidence. As the ALJ recounted, there was little or no objective medical evidence to support Sito's claims that she suffered from fibromyalgia, diverticulitis, or severe back and foot pain. Yet Dr. Kanney imposed severe or marked limitations on her ability to work that seemed to presume that Sito suffered from all of those impairments. It was therefore reasonable for the ALJ to discount Kanney's opinion because it was inconsistent with the record

4

as a whole. (I note in this regard that Sito's objections direct me to no medical evidence whatsoever that would support the limitations Dr. Kanney imposed.).

Likewise, the ALJ permissibly relied on several gaps in the treatment that Sito received from Dr. Kanney.[1] "[G]aps in a history of medical treatment are likely to suggest that the claimant was not receiving treatment during the gaps and was not disabled then." *Simmons v. Comm'r of Soc. Sec.*, 2011 WL 4344040, *3 (N.D. Ohio 2011); *see also Freeman v. Comm'r of Soc. Sec.*, 2018 WL 2093620, *10 (S.D. Ohio 2018) ("substantial gaps in treatment constitute good reasons [to] discredit the treating physician's opinions").

Finally, the Magistrate Judge correctly determined that the ALJ reasonably gave little weight to Sito's post-DLI medical evidence. (Doc. 18 at 40). Because "'[e]vidence of disability obtained after the expiration of insured status is generally of little probative value,'" the ALJ was free to reject it. (*Id.*) (quoting *Strong v. Soc. Sec. Admin.*, 88 F. App'x 841, 845 (6th Cir. 2004)).

For all of these reasons, I overrule Sito's second objection.[2]

### C. Fibromyalgia

Sito's third objection is that the ALJ erred in applying SSR 12-2p and concluding that Sito's alleged fibromyalgia was not medically determinable. (Doc. 19 at 5–6). Had the ALJ

---

[1] As the Magistrate Judge observed (Doc. 18 at 40), Sito testified that her husband earned enough money to permit her to stop working. (Doc. 12 at 70). This testimony permitted the ALJ to reject Sito's claim that she could not afford to see Dr. Kanney more frequently.

[2] I also join the Magistrate Judge in condemning, as wholly speculative and entirely improper, the ALJ's "conclusion" that Dr. Kanney provided his favorable opinion either because "he sympathize[d]" with Sito or to "satisfy [her] request and avoid unnecessary doctor/patient tensions." (Doc. 12 at 668). There was no evidence to support such a "conclusion," only what the ALJ admitted was her own "suspicion." Nevertheless, because the ALJ gave other "good reasons" for rejecting Kanney's opinion, this error was harmless. *Daniel v. Comm'r of Soc. Sec.*, 527 F. App'x 374, 375 (6th Cir. 2013).

5

properly applied that regulation, Sito maintains, she would have found that Sito suffers from fibromyalgia and imposed "further restrictions in [her] RFC." (*Id.* at 6).

SSR 12-2p is a regulation that "describes criteria for establishing that a person has a medically determinable impairment of fibromyalgia, the sources of evidence the ALJ may look to, and how a claimant's subjective assertions of pain and functional limitations are evaluated." *Lukkonen v. Comm'r of Soc. Sec.*, 653 F. App'x 393, 398–99 (6th Cir. 2016) (internal citations omitted); *see also* 2012 WL 3104869, *1 (July 25, 2012) (text of SSR 12-2p).

The regulation prescribes two sets of criteria the ALJ can use to establish fibromyalgia.

"The first set of criteria requires a history of widespread pain, at least 11 positive bilateral tender points on examination, both above and below the waist, and evidence that other disorders that could cause the signs or symptoms were excluded." (Doc. 12 at 663). The second set requires "a history of widespread pain, repeated manifestations of six or more fibromyalgia symptoms, and evidence that other disorders which could cause the repeated manifestation of symptoms, signs, or co-occurring conditions were excluded." (*Id.*).

Applying these criteria, the ALJ held that the record did not support "a medically determinable impairment of fibromyalgia." (*Id.*).

In a comprehensive analysis, Magistrate Judge Greenberg found that substantial evidence supported that determination. (Doc. 18 at 43–47). He noted that: 1) there were no "treatment records or medical evidence which establish that [Sito] was diagnosed with fibromyalgia"; 2) there was no evidence documenting "the 11 positive tender points required under § II.A" of the regulation; 3) the evidence failed to prove "'repeated manifestations' of fibromyalgia symptoms which could not have been caused by other conditions"; and 4) Sito's "sparse treatment records" simply failed to establish fibromyalgia under § II.B of the regulation. (*Id.* at 44, 46–47).

Sito's objection simply restates her position that the evidence was "consistent with fibromyalgia," and that the ALJ's conclusion to the contrary was erroneous. (Doc. 19 at 6). I reject that objection and adopt the reasoning of the Magistrate Judge, who correctly concluded that substantial evidence supported the ALJ's decision.

### D. Consultative Examiner's Opinion

Sito's fourth objection is that the ALJ erred by failing to discuss or explain the weight she gave to the opinion of Dr. Neil Shamberg, a consulting psychologist. (Doc. 19 at 6–7).

Dr. Shamberg evaluated Sito only once – in April, 2012, more than six months after Sito's DLI – and concluded that her mental limitations ranged from the slight to the extreme. (Doc. 12 at 480). He also gave her a global assessment of functioning (GAF) score of 50. (*Id.* at 479). Although the ALJ discussed Sito's GAF score, she did not address the inconsistency between Sito's RFC and the marked and severe limitations that Dr. Shamberg had imposed.

I agree with Sito that the ALJ's failure to explain that inconsistency was error.

An ALJ "must always consider and address medical source opinions [and if] the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted. SSR 96-8p, 1996 WL 374184, *7 (July 2, 1996). Despite this requirement, the ALJ did not identify or discuss Dr. Shamburg's opinion – other than to explain why she did give much weight to the GAF score (something to which Sito does not object).

That said, Magistrate Judge Greenberg correctly determined that this error was harmless. *See Dykes ex rel. Brymer v. Barnhart*, 112 F. App'x 463, 467–68 (6th Cir. 2004) (a failure to address a consultative examiner's opinion can be harmless as long as the ALJ's decision is otherwise supported by substantial evidence).

7

Most importantly, the ALJ discussed "all of Sito's mental health treatment which occurred during the adjudication period" – of which, I note, there was very little.[3] (Doc. 18 at 52). The ALJ likewise discussed the mental-capacity assessments that Sito's treating physician, Dr. Kanney, prepared after Sito's DLI. (Doc. 12 at 668). None of that evidence supported the very severe limitations that Dr. Shamberg imposed. (Doc. 18 at 53) (Magistrate Judge's conclusion that Shamberg's opinion was "inconsistent with the significant gaps in her mental health treatment, her activities of daily living, and her documented improvement as reflected in her treatment records").

Also critical is the fact that Dr. Shamberg's examination occurred nearly seven months after Sito's DLI. To be sure, post-DLI evidence may be relevant when it "relates back" to the claimant's pre-DLI limitations. *Walton v. Astrue*, 773 F. Supp. 2d 742, 750 (N.D. Ohio 2011). But here, Shamberg opined that his assessment of Sito was "based on her current anxiety and depression." (Doc. 12 at 484). Shamberg's opinions thus shed no light on Sito's mental impairments during the period of alleged disability.

Because substantial evidence during Sito's alleged period of disability does not support the limitations that Dr. Shamberg imposed, and because Shamberg's opinion does not "relate back" to that period, the ALJ's failure to discuss Shamberg's opinion was harmless.

### E. Conflict Between the Vocational Expert's Testimony and the *Dictionary of Occupational Titles*

Sito's final objection is that ALJ "failed to reconcile her RFC determination indicating [Sito] is capable of understanding, carrying out, and remembering simple instructions." (Doc. 19 at 8). According to Sito, the ALJ's finding that Sito is capable of performing work involving

---

[3] Sito completed court-ordered outpatient therapy in 2009, after which her prognosis was "good" and her progress "excellent." (Doc. 18 at 53–54).

only "simple instructions" conflicts with the ALJ's determination that she can work as an assembler, inspector, packer, or weigher. (*Id.*). This is so, Sito maintains, because the *Dictionary of Occupational Titles* (DOT) classifies each of those jobs as a "Reasoning Level 2" or "Reasoning Level 3" job that would require her to "carry out *detailed* but uninvolved instructions." (*Id.*) (internal emphasis in original).

Neither the Commissioner's merits brief nor its response to Sito's objections addressed this issue. (Doc. 16 at 1–22; Doc. 20 at 1–2).

The Magistrate Judge, however, concluded that Sito had raised the issue only summarily, without an "argument as to why, in this specific case, the ALJ should have inquired about a potential conflict or even why she was unable to perform the jobs provided by the VE," and rejected it on that basis. (Doc. 18 at 55 n.16).

SSR 00-4p places an "affirmative duty" on ALJs "to ask VEs if the evidence they provide 'conflicts with the information provided in the DOT' and to resolve any 'apparent conflicts.'" *Joyce v. Comm'r of Soc. Sec.*, 662 F. App'x 430, 435 (6th Cir. 2016) (quoting SSR 00-4p, 2000 WL 1898704 (Dec. 4, 2000)).

In the Sixth Circuit, "an ALJ satisfies her duty to inquire if she asks the VE whether the VE's testimony is consistent with the DOT and receives an affirmative response." *Id.* If the ALJ receives an affirmative answer, she has no further obligation, absent an objection by the claimant, to determine whether, in fact, a conflict exists. *E.g.*, *Leverich v. Comm'r of Soc. Sec.*, 2017 WL 2805166, *4 (W.D. Mich. 2017).

The ALJ in this case probably violated that requirement. Rather than ask the straightforward question that the Circuit outlined in *Joyce*, *supra*, the ALJ put the onus on the VE to alert her if something he said conflicted with the DOT:

9

| [The ALJ]: | Do you understand that if you give us an opinion conflicting with the information in the Dictionary of Occupational Titles you need to advise us of the conflict and the basis for your opinion? |
|---|---|
| [The VE]: | I will. |

(Doc. 12 at 57).

I need not decide whether this exchange complied with *Joyce*, however, because any error would be harmless.

Non-compliance with SSR 00-4p is harmless if no "actual conflict exists between the VE's testimony and the DOT." *Fackler v. Berryhill*, 2017 WL 8536027, *9 (N.D. Ohio 2017); *accord Joyce*, *supra*, 662 F. App'x at 436–37.

No such conflict exists in this case.

Sito's argument rests entirely on what she assumes – but makes no attempt to establish – is the obvious, and significant, difference between "simple instructions," which the ALJ determined she can execute (Doc. 12 at 666), and "detailed but uninvolved instructions" attendant to a Reasoning Level 2 job. The unstated premise of Sito's argument is that, because the ALJ limited her to tasks with "simple instructions," she cannot perform tasks with "detailed but uninvolved instructions."

Yet it is hardly obvious that a person who can execute "simple instructions" cannot also execute "detailed but uninvolved instructions."

Indeed, when the court in *Russell v. Comm'r of Soc. Sec.*, 2014 WL 1333262, *15 (N.D. Ohio 2014), rejected an argument identical to Sito's, it emphasized that the claimant "ignore[d] the qualifier the DOT places on the term 'detailed' as also being 'uninvolved. This qualifier

certainly calls into question any attempt to equate the Social Security's regulations' use of the term 'detailed' [instructions] with the DOT's use of that term in the reasoning levels."

More to the point, courts have rejected arguments like Sito's that an RFC permitting only "simple instructions" will preclude a claimant from performing a Reasoning Level 2 job. *E.g.*, *Pruitt v. Comm'r of Soc. Sec.*, 2018 WL 1468584, *10 n.3 (N.D. Ohio 2018) (collecting cases); *Russell*, *supra*, 2014 WL 1333262 at *15 (ALJ's finding that plaintiff "could perform simple one- and two-step instructions" was "not inconsistent with the ability to perform jobs with reasoning Level 2"); *Johnson v. Colvin*, 2013 WL 2456089, *4 (S.D. Ohio 2013) (ALJ's finding that plaintiff could perform only "simple, routine, and repetitive tasks" was consistent with VE's testimony that plaintiff could perform Reasoning Level 2 jobs).

At bottom, Sito has not proved (or even tried to prove) that her RFC precludes her from performing Reasoning Level 2 jobs. For that reason, and in line with the cases recognizing that an RFC like Sito's is consistent with performing such work, I overrule Sito's fifth objection.[4]

**Conclusion**

It is, therefore,

ORDERED THAT:

1. Sito's objections to the Magistrate Judge's Report and Recommendation (Doc. 19) be, and the same hereby are, overruled;

---

[4] The ALJ ruled that Sito could perform her past relevant work as an assembler (a Reasoning Level 2 position) and, in the alternative, found that she could work as a weigher (a Reasoning Level 3 position) and in two other Reasoning Level 2 positions. (Doc. 12 at 669–70). Because the ALJ's RFC determination is consistent with Sito's ability to perform the assembler position (as well as the two other Reasoning Level 2 positions), I need not decide whether it also consistent with her ability to perform a Reasoning Level 3 position.

2. The Magistrate Judge's Report and Recommendation (Doc. 18) be, and the same hereby is, adopted as the order of the court; and

3. The Commissioner's decision denying plaintiff's application for benefits be, and the same hereby is, affirmed.

So ordered.

/s/ James G. Carr
Sr. U.S. District Judge